UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

         - v. -

WALDYR PRADO and
IGOR CORNELSON,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORIGINAL

**INDICTMENT**

**15 CRIM 516**

## COUNT ONE
(Conspiracy to Commit Securities Fraud and
Fraud in Connection with a Tender Offer)

The Grand Jury charges:

### Relevant Entities and Individuals

1.    At all relevant times, Burger King Holdings, Inc. was
a Delaware corporation headquartered in Miami, Florida.  It was
the parent of Burger King Corporation (both collectively,
"Burger King"), a Florida corporation that franchises and
operates fast food hamburger restaurants under the Burger King
brand worldwide.  Burger King's stock was listed on the New York
Stock Exchange ("NYSE"), which is located in New York, New York,
and its options traded on various exchanges, including the NYSE
Amex Equities and the International Securities Exchange ("ISE"),
both located in New York, New York.

2.    At all relevant times, 3G Capital Partners ("3G") was
a Cayman Islands exempted company and private equity firm with



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 0 5 2015

its main offices in New York, New York.  3G was the manager of
3G Capital Special Situations Fund II, L.P. (the "3G Fund").

3.    From in or about 1999 through in or about May 2012,
WALDYR PRADO, the defendant, was employed as a registered
representative at a brokerage firm ("Firm-1").

4.    At all relevant times, Client-1 was a brokerage client
of Firm-1 and of WALDYR PRADO, the defendant.  From in or about
June 2010 through at least in or about September 2010, Client-
1's personal holdings were managed by Assistant-1.

5.    At all relevant times, IGOR CORNELSEN, the defendant,
was a brokerage client of WALDYR PRADO, the defendant. CORNELSEN
is a Brazilian citizen who resided in the Bahamas, and is a
wealthy and experienced investor, with a professional background
in the Brazilian banking industry.

## Overview of the Insider Trading Scheme

6.    From at least in or about May 2010 through in or about
September 2010, WALDYR PRADO and IGOR CORNELSEN, the defendants,
and others known and unknown, participated in an insider trading
scheme in which they used material, non-public information
("MNPI") to make and cause to be made profitable securities
trades for the benefit of PRADO and CORNELSEN.

7.    Specifically, while a registered representative at
Firm-1, WALDYR PRADO, the defendant, misappropriated MNPI from

- 2 -

Firm-1 and from Client-1.  In breach of his duties to Firm-1 and Client-1, PRADO used MNPI regarding Burger King to trade Burger King securities.  Additionally, PRADO relayed this MNPI to IGOR CORNELSEN, the defendant, who also used the MNPI to trade in Burger King securities.  By trading on the MNPI, PRADO and CORNELSEN together obtained illegal profits in excess of approximately $1.6 million.

### Background to 3G's Acquisition of Burger King

8.   From on or about March 29, 2010 through on or about August 31, 2010, 3G engaged in negotiations in an effort to acquire Burger King. 3G took steps to ensure the negotiations' confidentiality by, among other things, requiring 3G investors and advisors to sign confidentiality agreements that prohibited them from disclosing information about the proposed acquisition.

9.   On or about August 31, 2010, 3G proposed to complete the acquisition through a tender offer directly to Burger King stockholders at a price of $24 per share.

10.   On September 2, 2010, before the opening of trading, Burger King and 3G issued a press release announcing that 3G would acquire Burger King stock at $24 per share, or $4 billion in total (the "Public Announcement").

### PRADO obtains MNPI from Client-1

11.  In or about 2008, Client-1 made a capital commitment of $50 million to the 3G Fund with the understanding that the 3G Fund would ultimately make a corporate acquisition.

12.  In or about March or April 2010, a 3G principal informed Client-1 that 3G was in negotiations to have the 3G Fund acquire Burger King.  Client-1 signed a confidentiality agreement with 3G relating to a potential Burger King acquisition.  This confidentiality agreement permitted Client-1 to share information concerning the potential transaction with his financial advisors "who have a need to receive, review or use" the information in connection with evaluating the investment.

13.  From in or about March 2010 through the time of the Public Announcement on September 2, 2010, Client-1 received periodic updates of confidential information about the general progress of the deal from 3G's principals.  In or about April or May 2010, Client-1 divulged to his financial advisor, WALDYR PRADO, the defendant, the fact that the financing was intended for the 3G Fund's potential acquisition of Burger King.  Client-1 divulged this information to PRADO so that PRADO could assist Client-1 in evaluating how to fulfill Client-1's financing commitment.  Based on their professional relationship, Client-1

- 4 -

believed and expected that PRADO was going to keep this information confidential.

14.  Between on or about March 14, 2010 and on or about September 2, 2010, WALDYR PRADO, the defendant, communicated with Client-1 and Assistant-1 in person, by email, and by telephone.  In addition, PRADO traveled to Curitiba, Brazil, where Client-1 resided, in March, May, and August 2010.

## PRADO's Duties to Firm-1 Concerning Client Information and Insider Trading

15.  In or about March 2009, and then in or about June, 2010, WALDYR PRADO, the defendant, attested in writing to Firm-1 that he had access to and was in compliance with Firm-1's confidentiality and proprietary information policies, which prohibited any employee of Firm-1 from using, trading on, or disclosing to a third party any MNPI obtained from a client of Firm-1.

## PRADO Misappropriates the MNPI and Trades

16.  On or about May 17, 2010, WALDYR PRADO, the defendant, met Client-1 for lunch.  Within hours of their meeting, and in breach of his duties and responsibilities to Firm-1 and Client-1, PRADO purchased 300 Burger King July 2010 call options at a strike price of $20 for $33,185.  PRADO purchased 200 of the 300 options through the NYSE Amex Equities.

- 5 -

17.   On or about June 3, 2010, WALDYR PRADO, the defendant, purchased 7,000 shares of Burger King stock for approximately $135,410 through the over-the-counter market.

18.   Ultimately, most of the Burger King July 2010 call options owned by WALDYR PRADO, the defendant, expired worthless on or about July 17, 2010, as the Burger King acquisition did not occur by that date.

### PRADO Conveys MNPI to CORNELSEN and
### CORNELSEN's Initial Trades in Burger King

19.   During the evening of on or about May 17, 2010, after his lunch with Client-1, WALDYR PRADO, the defendant, sent to IGOR CORNELSEN, the defendant, an email which stated:   "if you are around call me at the Curitiba hotel … I have some info that I cannot say over the phone … You have to hear this."   Within minutes, and after the market closed, CORNELSEN called PRADO and they spoke for approximately ten minutes.

20.   From on or about May 18, 2010 through on or about June 17, 2010, IGOR CORNELSEN, the defendant, purchased Burger King call options and common stock.   These call options were purchased through multiple exchanges, including the ISE, located in New York, New York. During this time, CORNELSEN spoke to WALDYR PRADO, the defendant, by telephone on numerous occasions.

21.  Ultimately, the July 2010 call options purchased by IGOR CORNELSEN, the defendant, expired worthless because Burger King's stock price did not trade at or above $20 by July 17, 2010.

### PRADO and CORNELSEN's Continued Trading After July 2010

22.  On or about August 16, 2010, WALDYR PRADO, the defendant, spoke to Client-1 by telephone for approximately 30 seconds.  The following day, on or about August 17, 2010, PRADO spoke to Assistant-1 by telephone for approximately six minutes.

23.  On or about August 18, 2010, IGOR CORNELSEN, the defendant, sent WALDYR PRADO, the defendant, an email asking, "[i]s the sandwich deal going to happen," to which PRADO replied, "it's going to happen."  On the same day, CORNELSEN sent PRADO an email asking again whether the "sandwich deal" was going to happen, and PRADO replied it was a "sure thing."

24.  On or about August 19, 2010, IGOR CORNELSEN, the defendant, purchased 1,400 Burger King October 2010 call options with a strike price of $17.50 for $98,735 on the ISE, and 206 Burger King October 2010 call options with a strike price of $19 for $7,467.50.

25.  Between on or about August 23, 2010 and on or about August 26, 2010, WALDYR PRADO and IGOR CORNELSEN, the defendants, communicated with each other by telephone several

times, and PRADO and Assistant-1 communicated with each other by telephone several times.

26.  On or about August 25, 2010, WALDYR PRADO, the defendant, purchased 13,000 shares of Burger King stock for approximately $227,000 through the over-the-counter market, and 100 Burger King January 2011 call options with a strike price of $20 for $9,560 through the NYSE Amex Equities.

27.  On or about August 26, 2010, and on or about August 27, 2010, IGOR CORNELSEN, the defendant, purchased 1,794 Burger King October 2010 call options with a strike price of $19 for approximately $91,400.  Of these call options, 281 were purchased through the ISE.

28.  From in or about late August 2010, through on or about September 2, 2010 prior to the Public Announcement, WALDYR PRADO, the defendant, had frequent telephone contact with Assistant-1, and on one occasion, directly with Client-1.

29.  On or about September 1, 2010, WALDYR PRADO, the defendant, purchased 9,000 shares of Burger King stock for approximately $165,263 through the over-the-counter market.

30.  On September 2, 2010, following the Public Announcement, WALDYR PRADO, the defendant, sold his Burger King stock and options positions for a total profit of at least approximately $175,000, and IGOR CORNELSEN, the defendant, sold

his options for a total profit of over approximately $1.68 million, and a net profit (including the expired July 2010 options) of approximately $1.4 million.

## Means and Methods of the Conspiracy

31.  Among the means and methods by which WALDYR PRADO and IGOR CORNELSEN, the defendants, and others known and unknown, would and did carry out the conspiracy were the following:

a.    PRADO misappropriated and disclosed MNPI regarding 3G's acquisition of Burger King from Firm-1 and Client-1 in violation of (a) fiduciary and other duties of trust and confidence owed by PRADO to Firm-1 and Client-1; and (b) policies of Firm-1 regarding the use and safekeeping of MNPI.

b.    PRADO obtained the MNPI about Burger King through an exploitation of his professional relationship with Client-1.

c.    PRADO and CORNELSON used the MNPI about Burger King to engage in securities transactions and transactions in connection with a tender offer, and thereby profited from the MNPI.

## Statutory Allegations

## The Conspiracy

32.  From at least in or about May 2010 through in

- 9 -

or about September 2010, in the Southern District of New York
and elsewhere, WALDYR PRADO and IGOR CORNELSEN, the defendants,
willfully and knowingly combined, conspired, confederated, and
agreed together and with each other, and with others known and
unknown, to commit offenses against the United States, to wit,
securities fraud in violation of Title 15, United States Code,
Sections 78j(b) and 78ff, and Title 17, Code of Federal
Regulations, Sections 240.10b-5 and 240.10b5-2; and fraud in
connection with a tender offer, in violation of Title 15, United
States Code, Sections 78n(e) and 78ff, and Title 17, Code of
Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

### Objects of the Conspiracy

33.  It was a part and an object of the conspiracy that
WALDYR PRADO and IGOR CORNELSEN, the defendants, and others
known and unknown, willfully and knowingly, directly and
indirectly, by use of the means and instrumentalities of
interstate commerce, the mails, and the facilities of national
securities exchanges, would and did use and employ manipulative
and deceptive devices and contrivances in connection with the
purchase and sale of securities, in violation of Title 17, Code
of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by
(a) employing devices, schemes, and artifices to defraud; (b)
making untrue statements of material fact and omitting to state

material facts necessary in order to make the statements made,
in the light of the circumstances under which they were made,
not misleading; and (c) engaging in acts, practices, and courses
of business which operated and would operate as a fraud and
deceit upon persons, in violation of Title 15, United States
Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal
Regulations, Sections 240.10b-5 and 240.10b5-2.

34.  It was a further part and an object of the
conspiracy that WALDYR PRADO and IGOR CORNELSEN, the defendants,
and others known and unknown, willfully and knowingly, would and
did engage in fraudulent, deceptive, and manipulative acts and
practices in connection with a tender offer, in that after the
offering person had taken substantial steps to commence a tender
offer, PRADO and CORNELSEN, while in possession of material
information relating to such tender offer, which information
PRADO and CORNELSEN knew and had reason to know was non-public,
and which they knew and had reason to know had been acquired
directly and indirectly from the offering person, the issuer of
the securities sought and to be sought by such tender offer, and
an officer, director, partner, and employee and other person
acting on behalf of the offering person and such issuer, would
and did purchase and sell and cause to be purchased and sold
such securities, and securities convertible into and

- 11 -

exchangeable for such securities, and options and rights to obtain and to dispose of any of the foregoing securities, without public disclosure by press release and otherwise of such information and its source within a reasonable time prior to such purchase and sale, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

### Overt Acts

35.   In furtherance of the conspiracy and to effect the illegal objects thereof, WALDYR PRADO and IGOR CORNELSEN, the defendants, and others known and unknown, caused the following overt acts, among others, to be committed in the Southern District of New York and elsewhere:

a.   On or about May 17, 2010, PRADO sent an email by means of wire communication in interstate and foreign commerce to CORNELSEN.

b.   On or about May 17, 2010, PRADO purchased 300 Burger King call options with a July 2010 expiration date ("Burger King July 2010 call options"), 200 of which were purchased through the NYSE Amex Equities exchange, located in New York, New York.

c.   On or about May 18 and May 19, 2010,

CORNELSEN purchased 2,850 Burger King July 2010 call options through multiple exchanges, including through the International Securities Exchange ("ISE"), located in New York, New York.

d.   On or about June 2, 2010, PRADO made a telephone call to CORNELSEN, by means of wire communication in interstate and foreign commerce, which call lasted approximately nine minutes.

e.   On or about June 2, 2010, CORNELSEN purchased 1,000 Burger King July 2010 call options through an account with a brokerage firm located in New York, New York.

f.   On or about June 3, 2010, PRADO made a telephone call to CORNELSEN, by means of wire communication in interstate and foreign commerce, which call lasted approximately 14 minutes.

g.   On or about June 3, 2010, PRADO purchased 7,000 shares of Burger King common stock.

h.   On or about August 18, 2010, CORNELSEN sent an email, by means of wire communication in interstate and foreign commerce, to PRADO.

i.   On or about August 19, 2010, CORNELSEN purchased 1,400 Burger King call options with an October 2010 expiration date ("Burger King October 2010 call options") on the

- 13 -

ISE, located in New York, New York, through an account with a brokerage firm located in New York, New York.

    j. On or about August 19, 2010, CORNELSEN purchased 206 Burger King October 2010 call options through another brokerage firm.

    k. On or about August 25, 2010, PRADO purchased 13,000 shares of Burger King common stock.

    l. On or about August 25, 2010, PRADO purchased 100 Burger King call options with a January 2011 expiration date ("Burger King January 2011 call options") through the NYSE Amex Equities exchange.

    m. On or about August 26, 2010, and on or about August 27, 2010, CORNELSEN purchased 1,794 Burger King October 2010 call options, 281 of which were purchased through the ISE.

    n. On or about September 1, 2010, PRADO purchased 9,000 shares of Burger King common stock.

    o. On or about September 2, 2010, CORNELSEN sent an email, by means of wire communication in interstate and foreign commerce, to PRADO.

    (Title 18, United States Code, Section 371.)

## COUNT TWO
(Securities Fraud)

  The Grand Jury further charges:

- 14 -

36.  The allegations contained in paragraphs 1 through 31, and paragraph 35, are repeated and realleged as if fully set forth herein.

37.  From at least in or about May 2010 through in or about September 2010, in the Southern District of New York and elsewhere, WALDYR PRADO and IGOR CORNELSEN, the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, PRADO misappropriated material, non-public information about an impending acquisition of Burger King (the "MNPI") from his brokerage firm and brokerage client, and then conveyed the MNPI to CORNELSEN, resulting in both PRADO and CORNELSEN trading

- 15 -

in Burger King common stock and call options prior to the
acquisition's announcement, and together earning illegal profits
in excess of approximately $1.6 million.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5 and
240.10b5-2; and Title 18, United States Code, Section 2.)

## COUNT THREE
### (Fraud in Connection with a Tender Offer)

The Grand Jury further charges:

38.   The allegations contained in paragraphs 1 through 31,
and paragraph 35 are repeated and realleged as if fully set
forth herein.

39.   From at least in or about May 2010 through in
or about September 2010, in the Southern District of New York
and elsewhere, WALDYR PRADO and IGOR CORNELSEN, the defendants,
willfully and knowingly, engaged in fraudulent, deceptive, and
manipulative acts and practices in connection with a tender
offer, in that after the offering person had taken substantial
steps to commence a tender offer, PRADO and CORNELSEN, while in
possession of material information relating to such tender
offer, which information PRADO and CORNELSEN knew and had reason
to know was non-public, and which they knew and had reason to
know had been acquired directly and indirectly from the offering
person, the issuer of the securities sought and to be sought by

- 16 -

such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer, purchased and sold and caused to be purchased and sold such securities, and securities convertible into and exchangeable for such securities, and options and rights to obtain and to dispose of any of the foregoing securities, without public disclosure by press release and otherwise of such information and its source within a reasonable time prior to such purchase and sale, to wit, after a private equity firm had taken substantial steps to commence a tender offer of Burger King securities, PRADO and CORNELSEN, while in possession of material information relating to such tender offer, which information PRADO and CORNELSEN knew and had reason to know was non-public, and which they knew and had reason to know had been acquired directly and indirectly from the private equity firm, and from a person acting on behalf of the private equity firm, purchased and sold and caused to be purchased and sold Burger King common stock and call options, without public disclosure by press release and otherwise of such information and its source within a reasonable time prior to such purchase and sale.

(Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d); and Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

40.   The allegations contained in paragraphs 1 through 31, and paragraph 35, are repeated and realleged as if fully set forth herein.

41.   From at least in or about May 2010 through in or about September 2010, in the Southern District of New York and elsewhere, WALDYR PRADO and IGOR CORNELSEN, the defendants, willfully and knowingly combined, conspired, confederated, and agreed together and with each other, and with others known and unknown, to commit an offense under Title 18, United States Code, Section 1343, to wit, PRADO and CORNELSON participated in an insider trading scheme in which they used material, non-public information to make and cause to be made profitable trades in Burger King common stock and call options for the benefit of PRADO and CORNELSEN, and PRADO and CORNELSEN communicated with each other and others for the purpose of executing such scheme by sending and receiving email messages and engaging in telephone calls by means of interstate and foreign wire communications.

42.   It was a part and an object of the conspiracy that WALDYR PRADO and IGOR CORNELSEN, the defendants, having devised

- 18 -

and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## FORFEITURE ALLEGATION

43. As the result of committing one or more of the offenses charged in Counts One through Four of this Indictment, WALDYR PRADO and IGOR CORNELSEN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of those offenses and all property traceable to such property, including but not limited to:

a. A sum of money of at least $1,600,000 in United States currency.

## Substitute Asset Provision

44.    If any of the above-described forfeitable property in Paragraph 43, as a result of any act or omission of the defendants,

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

f.    it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

- 20 -

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

WALDYR PRADO and
IGOR CORNELSON,

Defendants.

INDICTMENT

15 Cr.

(15 U.S.C. §§ 78j(b), 78n(e) & 78ff;
17 C.F.R. §§ 240.10b-5, 240.10b5-2,
240.14e-3(a) & 240.14e-3(d);
18 U.S.C. §§ 371, 1349 and 2)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

8/5/15 — Filed Indictment
ae     A/W's issued
Case assigned to J. Koeltl.

J. Leah
USMJ